IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Nico Coty Toscani, aka John David Leatherwood, aka Nico Coty Tosconi, | Case No. 8:11-cv-03171-RBH-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Kathe Litton, Headquarters ADA Coordinator; Warden Pate; Chaplain Cleveland Stokes; HCA Pamela Derrick; Dr. Thomas Byrnes; Lt. Tyler; and Major Worrock, | |
| Defendants. | |

This matter is before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment and Plaintiff's motion for preliminary injunction. [Docs. 51, 92.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Kathe Litton, Headquarters ADA Coordinator ("Litton"), Warden Pate ("Pate") Chaplain Cleveland Stokes ("Stokes"), HCA Pamela Derrick ("Derrick"), Dr. Thomas Byrnes ("Byrnes"), Lt. Tyler ("Tyler"), and Major Worrock ("Worrock"; collectively, "Defendants") in their individual and official capacities. [Docs. 1, 15, 19.] Defendants filed their motion to dismiss or, in the alternative, for summary judgment on January 27, 2012. [Doc. 51.] By Order filed January 30, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to

adequately respond to the motion. [Doc. 53.] After being granted an extension of time [Doc. 59], Plaintiff filed a response on March 8, 2012[1] [Doc. 81]. Plaintiff subsequently filed a motion for preliminary injunction on April 26, 2012. [Doc. 92.] Defendants filed a response on May 8, 2012 [Doc. 93], and Plaintiff filed a reply on May 18, 2012 [Doc. 95]. The motions are ripe for review.

## **BACKGROUND**

Plaintiff, who was an inmate at the Allendale Correctional Institution ("Allendale") at the time he filed his Complaint,[2] generally alleges Allendale is not compliant with the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. [Docs. 1 at 3–5; 15.] He also appears to allege claims under § 1983. [Doc. 15 at 1.] Specifically, Plaintiff alleges ADA violations in the cells, hobby craft rooms, cafeteria, water fountains, showers, and playrooms at Allendale. [Doc. 1 at 3–5.] Additionally, Plaintiff alleges inmates in wheelchairs must cross over from the A-wing to the B-wing to take showers, which is a security violation; wheelchairs are broken, having legs that need to be replaced; health regulations are violated by allowing soiled clothing to be washed in regular population without bleach; and Plaintiff has been denied pain management, including a heating pad. [*Id.*] Plaintiff seeks "to get Allendale CI to make Hampton Unit A wing compliant with the ADA"; to have his "wheelchair replaced with legs attached and a wheelchair that is designed for long term living (Quickie, etc.) personal chair designed for my body size"; to make character- and faith-based programs wheelchair accessible; to have his heating pad

---

[1] On June 11, 2012, Plaintiff filed additional attachments to his response in opposition. [Doc. 100.] The Court has reviewed this filing when considering Defendants' motion.

[2] Plaintiff is currently confined at the Evans Correctional Institution ("Evans"). [*See* Doc. 37 (notice of change of address).]

2

replaced; to be transfered to ALU Perry to be closer to his home in North Carolina for his last eighteen months; a declaration that his rights under the Constitution and laws of the United States and the ADA Rehabilitation Act have been violated; a preliminary and permanent injunction ordering Defendants not to retaliate against him; other inmates to be added as plaintiffs; to have counsel assigned; to classify the case as a class action; an injunction ordering Defendants to have wheelchairs replaced and inmates moved to the B-wing; compensatory damages in the amount of $3,500 from each Defendant; punitive damages in the amount of $2,500 against each Defendant; declaratory relief; injunctive relief; a jury trial on all issues triable by a jury; and any additional relief the Court deems just, proper, and equitable. [*Id.* at 6; Doc. 15 at 5–6.] Although not entirely clear from his Complaint, it appears Plaintiff may also seek to have a Department of Justice investigation into Allendale's non-compliance with the ADA and damages for pain and suffering. [Doc. 1 at 6.]

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do

3

so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

4

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and entitle him to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). If, on a motion pursuant to Rule

12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

6

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

**Motion to Dismiss or, in the Alternative, for Summary Judgment**

*Claims for Injunctive and/or Declaratory Relief are Moot*

As an initial matter, because Plaintiff is no longer incarcerated at Allendale [*see* Doc. 37 (notice of change of address, indicating Plaintiff is now at Evans)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from Allendale, *id.*, and, as public official, Defendants are subject to suit for damages in their individual capacities[3] in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

*Failure to Exhaust Administrative Remedies*

Defendants contend they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. [Doc. 51-1.] Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

---

[3] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance

9

process).  *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").  Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court.  *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007);  *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint.  *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).  However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust.  *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2)));  *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

With respect to this case, the record reflects the South Carolina Department of Corrections ("SCDC") has "an Inmate Grievance System through which inmates may seek review of complaints relating to disciplinary hearing appeals, classification appeals,

10

policies/procedures, directives, or conditions which directly affect an inmate." [Doc. 51-2 ¶ 4.] The Inmate Grievance System requires an inmate first to attempt to informally resolve a complaint. [*Id.* ¶ 5.] If the inmate is unable to resolve the issue informally, he must complete a Step 1 grievance form and submit it to the Inmate Grievance Coordinator ("the Coordinator"). [*Id.* ¶ 6.] If the Step 1 grievance is properly submitted,[4] the Coordinator completes an investigation and either attempts to resolve the issue at the Coordinator level or makes recommendations to the warden about the disposition of the grievance. [*Id.* ¶ 9.] The warden reviews the investigation and recommendations and writes a decision and response to the inmate on the Step 1 form. [*Id.* ¶ 10.] The Coordinator then returns the form to the inmate, explaining the warden's decision, and the inmate may either accept or reject the warden's decision. [*Id.* ¶ 11.] If the inmate is unsatisfied, the Coordinator gives the inmate a Step 2 grievance form. [*Id.* ¶ 12.] Step 2 grievances are sent to the SCDC Columbia Office, Grievance Branch, for independent review and investigation. [*Id.* ¶ 13.] After the investigation is complete, a decision is rendered, placed on the Step 2 form, and sent back to the correctional institution to give to the inmate. [*Id.* ¶ 14.] If the inmate remains unsatisfied, the Coordinator gives the inmate a form to use to seek administrative review by the South Carolina Administrative Law Court. [*Id.* ¶ 15.]

Grievance records indicate Plaintiff filed twenty-six grievances while incarcerated at Allendale. [*Id.* ¶ 21.] Of those grievances, twelve are related or potentially related to claims Plaintiff asserts in this action and were filed before Plaintiff's Amended Complaint was filed.

---

[4]Step 1 grievances are sometimes returned to the inmate unprocessed for various reasons, including (1) it is a duplicate of another grievance, (2) there was not an attempt at informal resolution, or (3) it involves a non-grievable issue. [Doc. 51-2 ¶ 7.] If the Step 1 grievance is returned unprocessed, the inmate may then file a proper Step 1 grievance or appeal to the South Carolina Administrative Law Court. [*Id.* ¶ 8.]

[*Id.* at 4–5, ¶ 22; 9–41.] Six of the twelve related or potentially related grievances were unprocessed for failure to comply with procedures and were not properly re-filed or appealed to the Administrative Law Court [*id.* at 5–7, ¶¶ 23, 24, 27, 29, 31, 34; 9–10 (Grievance No. ACI-0242-11); 11–12 (Grievance No. ACI-0243-11); 19–20 (Grievance No. ACI-0410-11); 24–25 (Grievance No. ACI-0872-11); 30–31 (Grievance No. ACI-0928-11); 40–41 (Grievance No. ACI-0986-11)]; one resulted in a negotiated resolution after Plaintiff filed his Step 1 grievance and was not appealed [*id.* at 5–6, ¶ 26; 17–18 (Grievance No. ACI-0276-11)]; one was denied at Step 1 and was not appealed [(*id.* at 6, ¶ 28; 22–23(Grievance No. ACI-0455-11)]; and four are currently pending at the Step 2 level [(*id.* at 5–7, ¶¶ 25, 30, 32, 33; 13–16 (Grievance No. ACI-0295-11); 26–29 (Grievance No. ACI-0903-11); 32–35 (Grievance No. ACI-0984-11); 36–39 (Grievance No. ACI-0985-11)]. Additionally, Plaintiff acknowledges he has not received a final institutional answer or determination on his grievances. [Doc. 1 at 2.] Accordingly, it appears Plaintiff has failed to exhaust his administrative remedies.

In his Amended Complaint, Plaintiff states, "ADA section 504 Rehabilitation Act or Title II violations need not be exhausted by grievances." [Doc. 15 at 4.] However, Plaintiff is incorrect; "[e]xhaustion under the PLRA is required for both ADA claims and claims under the Rehabilitation Act." *Nolan v. Hamidullah*, No. 4:07-1141-JFA-TER, 2009 WL 2982746, at *4 (D.S.C. Sept. 10, 2009) (citing *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060–61 (9th Cir. 2007)).

In his response in opposition to Defendants' motion, Plaintiff argues he could not exhaust his administrative remedies because the Step 2 grievances are not being timely

processed[5]; specifically, Plaintiff's Step 2 grievance in Grievance Number ACI-0295-11 had been pending for eleven months at the time he filed his response. [Doc. 81 at 1.] As the Seventh Circuit has observed, "[W]e refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (quoting *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)) (alteration in *Lewis*). Several circuits have held a grievance may be considered exhausted under the PLRA when a prisoner files a grievance but has not received a timely determination. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable . . . ."); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

Here, as previously stated, Plaintiff has four pending Step 2 grievances: Grievance Numbers ACI-0295-11, ACI-0903-11, ACI-0984-11, and ACI-0985-11. The Step 2

---

[5]Plaintiff does not argue he has exhausted administrative remedies or was unable to exhaust administrative remedies with respect to the grievances for which he did not file a Step 2 grievance form—Grievance Numbers ACI-0242-11, ACI-0243-11, ACI-0276-11, ACI-0410-11, ACI-0455-11, ACI-0872-11, ACI-0928-11, and ACI-0986-11. Accordingly, claims related to these grievances should be dismissed for failure to exhaust administrative remedies.

grievance form in Grievance Number ACI-0295-11 is dated April 8, 2011 with a received date of April 11, 2011. [*Id.* at 16.] The Step 2 grievance form in Grievance Number ACI-0903-11 is dated September 22, 2011 with a received date of September 27, 2011. [*Id.* at 29.] The Step 2 grievance form in Grievance Number ACI-0984-11 is dated October 26, 2011 with a received date of October 31, 2011. [*Id.* at 35.] Finally, the Step 2 grievance form in Grievance Number ACI-0985-11 is dated October 26, 2011 with a received date of October 31, 2011. [*Id.* at 39.] Plaintiff filed this action on November 15, 2011.[6] Plaintiff alleges SCDC has "125 days or so" to resolve a grievance. [Doc. 81 at 3.] Neither Plaintiff nor Defendants have provided the Court with a copy of the grievance policy outlining any time limits for processing grievances. However, even accepting Plaintiff's alleged 125-day time period as true, the Step 2 grievances in Grievance Numbers ACI-0903-11, ACI-0984-11, and ACI-0985-11 were not exhausted as of the date this action was filed because these Step 2 grievances were dated 54 days, 20 days, and 20 days and received 49 days, 15 days, and 15 days before Plaintiff filed his Complaint.[7] Accordingly, because Plaintiff's only argument with respect to these grievances is that they must be processed within about 125 days but Plaintiff failed to wait 125 days to file his Complaint, these grievances should be dismissed for failure to exhaust administrative remedies. However, at this stage of the

---

[6]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on November 15, 2011. [Doc. 1-1 (envelope stamped as received by prison mailroom on November 15, 2011).]

[7]Even if the grievance process concerning these grievances has now been completed, these claims are subject to dismissal for failure to exhaust, as it is not permissible to file a lawsuit concerning a grievable matter before completing the grievance process. *See Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (holding a prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (holding a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").

14

litigation, because Plaintiff alleges grievances must be processed within 125 days, Defendants failed to file a reply, and neither party has provided the Court with evidence regarding deadlines under the prison grievance policy, out of an abundance of caution, the Court recommends Defendants' motion for summary judgment be denied with respect to the claims raised in Grievance Number ACI-0295-11—that the cafeteria is not ADA compliant, making it difficult for Plaintiff to maneuver with his wheelchair.[8]

**Motion for Preliminary Injunction**

In his motion for preliminary injunction, Petitioner asks the Court to order Defendants to treat Plaintiff's chronic pain, "such as issue Air Mattress and Trapeze Bar and Tramadol (non-narcotic) for severe pain and Heating Pad or TENS Unit to help relieve some pain plaintiff suffers daily." [Doc. 92 at 3.] Plaintiff also asks the Court to order staff at Evans to copy legal documents for Plaintiff. [*Id.*]

Plaintiff's allegations in his motion for preliminary injunction are related to his § 1983 claim for deliberate indifference to medical needs. However, as previously stated, his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade*, 407 F.3d at 248–49 (holding former detainee's request for injunctive relief was moot). Plaintiff's Complaint and Amended Complaint set forth the claims that are the basis of this case, and the allegations contained in Plaintiff's Complaint and Amended Complaint relate to Plaintiff's incarceration at Allendale. However, Plaintiff has since been transferred to Evans. Additionally, with the exception of Litton, who works at SCDC headquarters, all

---

[8]At this procedural posture, Defendants' motion for summary judgment addresses only the exhaustion issue; accordingly, the Court makes this recommendation based solely on the exhaustion argument. The Court makes no suggestion regarding the merits of the remaining claim and recommends Defendants be allowed to file a motion for summary judgment addressing the merits of Plaintiff's claim about the cafeteria.

Defendants are employees at Allendale. Plaintiff cannot use a lawsuit involving allegations about Allendale as a vehicle to seek injunctive relief at Evans. Accordingly, Plaintiff's motion for preliminary injunction should be denied.[9]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART and Plaintiff's motion for preliminary injunction be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

June 29, 2012
Greenville, South Carolina

---

[9] Plaintiff has agreed to withdraw the portion of his motion for preliminary injunction asking the Court to order staff at Evans to copy legal documents for Plaintiff. [Doc. 95 at 1.]