IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Nico Coty Toscani, aka John David Leatherwood, Nico Coty Tosconi, and Jon D. Leatherwood, | )<br>)<br>) Case No. 8:11-cv-03171-DCN-JDA |
| Plaintiff, | )<br>) **REPORT AND RECOMMENDATION**<br>)  **OF MAGISTRATE JUDGE** |
| v. | ) |
| Kathe Litton, Headquarters ADA Coordinator; Warden Pate; Chaplain Cleveland Stokes; HCA Pamela Derrick; Dr. Thomas Byrnes; Lt. Tyler; and Major Worrock, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

This matter is before the Court on Defendants' motion for summary judgment.[1] [Doc. 137.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Kathe Litton, Headquarters ADA Coordinator ("Litton"), Warden Pate ("Pate"), Chaplain Cleveland Stokes ("Stokes"),

---

[1] Defendants' motion for summary judgment was originally filed as Defendants' objections to the undersigned's previously filed Report and Recommendation. The Honorable David C. Norton affirmed the Report and Recommendation and noted that exhibits attached to the objections should have been filed with Defendants' motion to dismiss. [Doc. 136 at 2.] Judge Norton further found,

> Failure of defendants to fully brief and argue the matters addressed in their "Objection" to the R&R requires this court to remand plaintiff's claim to the Magistrate Judge so that she can address his final claim on a full record. Such piecemeal litigation is improper and will not be sanctioned by this court.

[*Id.*] Accordingly, Judge Norton ordered that Grievance ACI-0295-11 be remanded to the undersigned for reconsideration in light of the material provided to the Court and that the "Objection" be considered a new motion for summary judgment. [*Id.*]

HCA Pamela Derrick ("Derrick"), Dr. Thomas Byrnes ("Byrnes"), Lt. Tyler ("Tyler"), and Major Worrock ("Worrock"; collectively, "Defendants") in their individual and official capacities. [Docs. 1, 15, 19.] The Court filed the pending motion for summary judgment on February 12, 2013. [Doc. 137.] By Order filed the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 138.] Plaintiff filed responses on March 4, 2013 and March 22, 2013. [Docs. 146; 154.] The motion is now ripe for review.

## BACKGROUND

Plaintiff, who was an inmate at the Allendale Correctional Institution ("Allendale") at the time he filed his Complaint,[2] generally alleges Allendale is not compliant with the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. [Docs. 1 at 3–5; 15.] He also appears to allege claims under § 1983. [Doc. 15 at 1.] Specifically, Plaintiff alleges ADA violations in the cells, hobby craft rooms, cafeteria, water fountains, showers, and playrooms at Allendale. [Doc. 1 at 3–5.] Additionally, Plaintiff alleges inmates in wheelchairs must cross over from the A-wing to the B-wing to take showers, which is a security violation; wheelchairs are broken, having legs that need to be replaced; health regulations are violated by allowing soiled clothing to be washed in regular population without bleach; and Plaintiff has been denied pain management, including a heating pad. [*Id.*] Plaintiff seeks "to get Allendale CI to make Hampton Unit A wing compliant with the ADA"; to have his "wheelchair replaced with legs attached and a wheelchair that is

---

[2]Plaintiff is currently confined at the NCDOC Central Prison. [*See* Doc. 159 (most recent notice of change of address).]

2

designed for long term living (Quickie, etc.) personal chair designed for my body size"; to make character- and faith-based programs wheelchair accessible; to have his heating pad replaced; to be transferred to ALU Perry to be closer to his home in North Carolina for his last eighteen months; a declaration that his rights under the Constitution and laws of the United States and the ADA Rehabilitation Act have been violated; a preliminary and permanent injunction ordering Defendants not to retaliate against him; other inmates to be added as plaintiffs; to have counsel assigned; to classify the case as a class action; an injunction ordering Defendants to have wheelchairs replaced and inmates moved to the B-wing; compensatory damages in the amount of $3,500 from each Defendant; punitive damages in the amount of $2,500 against each Defendant; declaratory relief; injunctive relief; a jury trial on all issues triable by a jury; and any additional relief the Court deems just, proper, and equitable. [*Id.* at 6; Doc. 15 at 5–6.] Although not entirely clear from his Complaint, it appears Plaintiff may also seek to have a Department of Justice investigation into Allendale's non-compliance with the ADA and damages for pain and suffering. [Doc. 1 at 6.]

On February 12, 2013, Judge Norton granted in part and denied in part Defendants' then-pending motion for summary judgment. [Doc. 136.] The motion was denied with respect to the claims raised in Plaintiff's Grievance Number ACI-0295-11—that the cafeteria is not ADA compliant, making it difficult for Plaintiff to maneuver with his wheelchair. [*Id.*; Doc. 102.] Accordingly, the only claim before the Court at this procedural posture is related to the claims raised in Plaintiff's Grievance Number AC-0295-11.

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may

fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants contend they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. [Docs. 51-1; 137.][3] The Court disagrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The

---

[3] Because Defendants' objections to the previously filed Report and Recommendation were refiled as a new motion for summary judgment, the Court construes the pending motion for summary judgment as raising the same argument raised in the previous motion for summary judgment with respect to Grievance Number ACI-0295-11—Defendants are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. [*See* Doc. 51-1.] The pending motion for summary judgment adds factual information regarding the SCDC grievance procedure. [Doc. 137.]

exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x

268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

*SCDC Policy GA-01.12*

The South Carolina Department of Corrections ("SCDC") has "an Inmate Grievance System through which inmates may seek review of complaints relating to disciplinary hearing appeals, classification appeals, policies/procedures, directives, or conditions which directly affect an inmate." [Doc. 51-2 ¶ 4.] Under SCDC Grievance Policy GA-01.12, in most instances, inmates must make an effort to informally resolve a grievance by either submitting a Request to Staff Member Form or by discussing their complaint with the appropriate supervisor/staff. [Doc. 137-2 § 13.1.] If informal resolution is not possible, the inmate is to complete Form 10-5, Step 1, within 15 days of the alleged incident. [*Id.*] Within ten working days of receiving the grievance, the grievance is entered into the automated system and given to the Inmate Grievance Coordinator. [*Id.* § 13.2.] Within ten working days of receiving the grievance, the Inmate Grievance Coordinator completes the additional text for the grievance and attempts to resolve the matter informally. [*Id.*] With certain exceptions, not applicable here, the Warden will respond to the inmate's grievance in writing no later than 40 days from the date the grievance was formally entered into the

system. [*Id.* § 13.4.] The Inmate Grievance Coordinator serves the response on the inmate within five working days, and the inmate signs and dates the response to acknowledge receipt. [*Id.*] If the inmate is not satisfied with the decision, the inmate may appeal to the Division Director of Operations for final resolution of the grievance. [*Id.* § 13.5.]

To initiate the appeal, the inmate must complete SCDC Form 10-5a, Step 2, and submit this form as well as completed copies of Step 1 to the Inmate Grievance Coordinator within five calendar days of receipt of the response to the Step 1 grievance. [*Id.* § 13.6.] The Inmate Grievance Coordinator forwards the Step 2, the Step 1, and copies of necessary documentation to the Inmate Grievance Branch within five days; and the responsible official will render the final decision on the grievance within 60 days from the date the Inmate Grievance Coordinator received the appeal of the Warden's decision. [*Id.*] The Inmate Grievance Coordinator then serves the response to the inmate within five working days, and the inmate signs and dates the response to acknowledge receipt. [*Id.*] According to the policy, grievances will be processed from initiation to final disposition within 125 days except when the Chief/Designee, Inmate Grievance Branch, specifically agrees to a request for an extension. [*Id.* § 11.] If an extension is granted, the Inmate Grievance Coordinator will notify the inmate in writing. [*Id.*] In any instance, the policy provides that the maximum extension that may be given is 90 days; however, under certain circumstances the grievance process may exceed 215 days. [*Id.*]

*Grievance Number ACI-0295-11*

The Step 2 grievance form in Grievance Number ACI-0295-11 is dated April 8, 2011 with a received date of April 11, 2011. [Doc. 51-2 at 16.] Ann Hallman ("Hallman"), the SCDC Grievance Chief, avers that, at the time Grievance Number ACI-0295-11 was received, the Inmate Grievance Branch had suffered the loss of Inmate Grievance Coordinators twice at Allendale. [Doc. 137-1 ¶ 16(a)]. The extra work created by those and other vacancies was covered by Hallman until replacements could be hired and trained. [*Id.* ¶ 16(b)–(c).] From November 2010 through May 2011, Hallman also assisted covering Branch Chief duties; then, in May 2011, Hallman was promoted to fill the Branch Chief position, adding those duties to her already heavy case load. [*Id.* ¶ 16(d)–(e).] Additionally, Hallman was out of the office for up to three months due to illness. [*Id.* ¶ 16(f)]. Hallman represents that Grievance No. ACI-0295-11 was still being processed at the time she completed her affidavit but had been assigned to a grievance coordinator and was nearing completion. [*Id.* ¶ 17.]

Defendants argue that, due to staffing and health issues and Hallman's agreeing to an extension of time for processing Grievance Number ACI-0295-11, Plaintiff has failed to exhaust administrative remedies. [Doc. 137 at 4.] Plaintiff contends that he was not given notice of an extension under the policy. [Doc. 146 at 1.]

Courts in this district have held that "[w]hen a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA." *Williams v. Loyd*, C/A No. 2:09-2289-JFA-RSC, 2010 WL 3609790, at *4 (D.S.C. Apr. 28, 2010) (collecting cases holding that administrative remedies are deemed

exhausted when prison officials fail to timely respond to a properly filed grievance), *Report and Recommendation adopted by* 2010 WL 3609512 (D.S.C. Sept. 13, 2010). Here, prison officials have failed to timely respond to Plaintiff's Step 2 grievance. This case was filed on November 22, 2011, after Plaintiff's Step 2 grievance had been pending approximately 225 days. As of February 12, 2013, Plaintiff's grievance was still pending, almost two years after the Step 2 grievance was submitted. The Court notes that while Defendants cite to an alleged extension of time to respond, they have failed to provide the Court with either a copy of the extension that was provided to Plaintiff in compliance with Policy GA-01.12 or an indication of the length of the extension. Accordingly, Plaintiff's Grievance Number ACI-0295-11 should be considered exhausted under the PLRA, and Defendants' motion for summary judgment for failure to exhaust should be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment with respect to Grievance ACI-0295-11 be DENIED.[4]

IT IS SO RECOMMENDED.

> s/Jacquelyn D. Austin
> United States Magistrate Judge

August 8, 2013
Greenville, South Carolina

---

[4] If this recommendation is adopted, the Court further recommends that Defendants be directed to file dispositive motions addressing the merits of Plaintiff's claim within thirty (30) days of the Court's Order.